,STATE OF OHIO EX REL. DECKEBACH v. HAGERTY.

WHAT CONTRACT FOR HUNTING UP OMITTED PROPERTY MAY INCLUDE.

A contract to hunt up property omitted from the tax duplicate for a percentage of the amount secured, under sec. 1343 of Rev. Stat., may cover not merely omitted property, but also restoring improper deductions from value, though omitted by mistake of the auditor's clerk.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

It is admitted that the relator, George Deckebach, under the provisions of sec. 1343 (*a*), Rev. Stat., had a contract with the county officers therein named, that on his ascertaining and furnishing to the "county auditor of this county, the facts and evidence necessary to authorize him to subject to taxation any property, improperly omitted from the tax duplicate," that on the collection of the taxes on such omitted property he was to be paid the sum of twenty-five per cent. on the amount of the money actually paid into the county treasury as taxes on such omitted property. It is further conceded that by the efforts of said Deckebach, and on the facts and evidence furnished by him, the county auditor has largely increased the amount of the duplicate by adding thereto large sums, which by mistake or otherwise, had been improperly deducted from the valuation of land already on the duplicate—as in transferring the valuation from one duplicate to that of the succeeding year—or where the valuation of real estate had been improperly and illegally reduced by the county board of equalization, and placed on the duplicate at such reduced valuation by the county auditor. It is also admitted that the taxes on such increased valuation have been paid, and that, if the statute authorized a contract and payment for such services, then the plaintiff in the three cases is entitled to the relief sought.

But it is claimed by the county solicitor, that the statute did not authorize a contract which would entitle the plaintiff to a commission on the amount of the additional taxes thus brought into the county treasury—that all that it authorizes is a contract for bringing upon the duplicate parcels of real estate wholly omitted therefrom.

What, then, is the fair and natural meaning of the statute in this respect? As a part of the same act was another sec. 1343*b*, and if this throws any light on the legislative intent (as it is claimed that it does), the two should be read together. The latter section, evidently in view of the provisions of the preceding one, and to prevent any collusion by which property should be omitted from the duplicate, or the valuation thereof reduced, so that compensation under this statute could be thus improperly obtained for restoring it to the duplicate, made it a criminal offense for "any assessor to wilfully omit to return any property for taxation, or for any auditor to wilfully omit any property from the tax duplicate that is liable to taxation, or for any persons to conspire to wrongfully increase the number or amount of any tax omission."

It would seem quite plain that the purpose and intent of the legislature in the enactment of this statute, was to provide an additional mode by which property liable to taxation, and which, for some reason, was not bearing its proper share of the burden, should be made to do so, by having it properly brought upon the duplicate, and the means adopted to bring this about, was by allowing a contract to be made with some one to attend to these matters, at an agreed price, which was to be paid only on receipt of the increased taxes. And it is equally

plain, that one of the objects aimed at (by the collection of the taxes, which, under our revenue laws, should be paid), would be accomplished in one case as well as in the other; that is, by having the true valuation on the duplicate, as much as by adding parcels wholly omitted therefrom, and the fact of a valuation too low in amount would be as prejudicial to the public as the omission of property of an equal valuation; and the same reason exists for the correction of both. It would, therefore, seem probable that the legislature in seeking the correction of these known and existing evils, would aim to make the same provision as to each, and we would feel disposed to give the statute this meaning, unless the language used in it fairly excluded this idea, and looking at the whole statute, its object and purpose, and the evils sought to be corrected, we are of the opinion that the language, "improperly omitted property," should be held to include the case, where a part of the valuation of property on the duplicate had been improperly omitted therefrom.

If a tract of real estate be placed on the duplicate without any valuation being affixed thereto, no tax could be collected thereon, for the valuation is the essential part thereof; and as the tax levied on a specific piece of real estate could only be a certain authorized per cent. of the valuation, as shown by the duplicate, any levy in such case would be invalid. And where the valuation is wholly omitted, if the fact was discovered by the tax inquisitor, and the proper valuation was placed against it, this would in effect bring this property onto the duplicate, and would, we think, be a case provided for by the statute, and with equal, if not stronger reason, (on account of the greater difficulty in discovering it) it would seem that a case where a part only of the valution is omitted from the duplicate, that this is property omitted, and would certainly come within the spirit and reason, and we think the letter of the statute. And especially is there reason for so holding, if it can at all fairly be done, in those cases in which very large additions have been made to the duplicate, and the taxes collected thereon, after the county board of equalization had, as held by the supreme court, without legal warrant, reduced the valuation of several hundred tracts of real estate, and where the true valuation was replaced upon the duplicate as the result of protracted and costly litigation, in a large number of cases, and in several courts, carried to a successful issue by the plaintiff in this case at his own cost, though resisted by those representing the county therein. Whatever may have been said as to this contract being an imprudent one on the part of the county, in so far as the percentage of the tax inquisitor is concerned, (and it does look large) it must be conceded, (and is by the county solicitor) that in the class of cases just referred to, which constitute much the largest part of those involved in this litigation, the contract has been of great value to the public, and the compensation of the plaintiff has been fairly earned, and it does not seem to be a case where the statute should be construed with great strictness against him.

We see nothing in the provisions of sec. 1343$b$, conflicting with the view which we have taken It speaks of omissions from the tax duplicate, but it also speaks of and makes it unlawful, to wrongfully increase the number or "the amount of any tax omission." which language as to the amount of any tax omission, so far as we can see, can apply only to an omission of a part of the valuation of property already on the duplicate, and this strengthens the view that a contract for the restoration of the true valuation was a part of the legislative intent.

We cannot see that the fact that the tax inquisitor would thus profit by the mistake of the auditor or his clerks in failing to place the full valuation of property upon the duplicate, would be against public policy, or be a reason why a court should place the strictest construction on the language used in the statute. Precisely the same obligations could be urged to the compensation of the inquisitor in a case where a clerk in the office of the auditor should, by mistake or otherwise, wholly omit certain parcels of real estate from the duplicate, and by his efforts they should be restored, and the tax collected upon them. And yet there is no doubt but in this case the commission would be payable.

Our conclusion then is, that the mandamus should issue as prayed for, and that the judgment of the court of common pleas, in the other two cases, adverse to the plaintiff below, should be reversed, and on the agreed statement of facts, judgment be entered in conformity with this opinion.

Thomas McDougall and Rufus B. Smith, for plaintiffs in error.

F. S. Spiegel, county solicitor, for defendants in error.